LEE COUNTY *v.* ROBERTSON.

Opinion delivered December 24, 1898.

1. LEVYING COURT—DIVERSION OF TAX.—Under Const. 1874, art. 16, § 11, providing that "no moneys arising from a tax for one purpose shall be used for any other purpose," the levying court has no power to appropriate for county general purposes an unexpended balance of a fund in the county treasury which has been levied and collected for the purpose of paying indebtedness incurred prior to adoption of the constitution, so long as such indebtedness remains unpaid. (Page 84.)

2. COUNTY BONDED DEBT—DIVERSION OF TAX.—Diversion of money raised for the purpose of paying the bonded debts of a county into the general revenue fund is forbidden by Acts 1895, p. 170, § 8.   (Page 86.)

3. ILLEGAL APPROPRIATION—EFFECT.—An order of the levying court appropriating funds to another purpose than that for which they were raised is tantamount to an allowance and enforcement of an illegal exaction against every tax payer in the county.   (Page 86.)

4. SAME—RIGHT OF TAXPAYER TO APPEAL.—Where a citizen and taxpayer of a county appeared .in the levying court, and asked to be made party to an order misappropriating county funds, and made objections thereto, and was treated as an adversary party in that court, though not formally made a party, he will be entitled to appeal to the circuit court from the order making such appropriation.   (Page 87.)

Appeal from Lee Circuit Court.

HANCE N. HUTTON, Judge.

### STATEMENT BY THE COURT.

In October, 1895, the quorum court of Lee county levied a tax of three mills for "old indebtedness." The old indebtedness had been bonded; the principal of the bonds being due in twenty years, with interest payable semi-annually. Under the levy of 1895 for old indebtedness, there was raised a sum sufficient to pay the interest on said indebtedness which had accrued, and leave a balance in the hands of the county treasurer of $2,722.43, to the credit of old indebtedness. In October, 1896, the quorum court, on motion of one of its members, ordered that $2,500 unexpended balance in the hands of the county treasurer to the credit of old indebtedness "be reappropriated for the use of the county general purposes in the payment of outstanding warrants of Lee county," and the treasurer was ordered to transfer the same accordingly, etc. Before this order was made, however, J. T. Robertson, a citizen and taxpayer of Lee county, appeared and asked to be made a party to the proceedings, and to be allowed to file his objections to same, which he did through his counsel, and was heard in opposition to the motion, after which the order was entered as indicated *supra*, whereupon said Robertson filed his affidavit and prayer for appeal to the circuit court, which was granted. The case was tried in the circuit court upon the transcript and certain other records of the county court and quorum court and

oral testimony of the county clerk, which showed that the bonds issued to cover the old indebtedness of the county—*i. e.* indebtedness prior to the constitution of 1874—were still outstanding and unpaid; that all of the accrued interest on said indebtedness had been paid out of the fund produced from the three mills levy of October, 1895, and that there was a balance after such payment, in the hands of the treasurer, of $2,722.43. The circuit court reversed the order of the county court, and the county appeals.

*McCulloch & McCulloch,* for appellant.

A private citizen has no appeal from the decisions of the county or quorum court, except when it acts judicially and in adversary proceedings.   40 Ind. 217; 5 Sneed, 515; 8 Humph. 634.   Cf. 51 Ark. 159; 52 Ark. 99; 53 Ark. 287.   The acts of the quorum court in levying taxes and appropriating the revenue of the county are entirely administrative, and not judicial. Cooley, Tax. 244; 110 U. S. 321.   A taxpayer can object to a levy only in so far as it effects him.   Sand. & H. Dig. § 6423. The clause of the constitution placing limitations upon the management of public funds should be construed liberally to conform with the general spirit of the constitution.   59 Ark. 513;. 60 Id. 343; 51 Ark. 534.   Sec. 11, art. 17, Const. of 1874, applies to only those tax levies made by the legislature for state purposes.   40 Pac. 130;   109 N. Y. 100.

*Jas. P. Brown,* for appellee.

As to right of appeal from judgments of the county court, see 34 Ark. 240; 36 Ark. 378.   Appellee was made a party below without objection, and it is now too late to interpose same. The constitution declares that money raised by taxation for a specific purpose shall not be diverted to any other.   Const. art. 6, § 11; 46 Ark. 156.

Wood, J., (after stating the facts.):   Two questions are presented:

1.   Did the quorum court have the power to appropriate for "county general purposes" an unexpended balance of a fund in the county treasury which had been levied and collected for the purpose of paying the "old indebtedness" of the county (*i. e.*

indebtedness which was incurred prior to the adoption of the
constitution of 1874)?   The order of the quorum court was in
plain violation of art. 16, § 11, of the constitution, which de-
clares that "no moneys arising from a tax for one purpose shall
be used for any other purpose."   Here the court was proposing
to use a fund for "county general purposes" which had been
levied and collected for the specific and entirely different pur-
pose of paying "old indebtedness."   It is true that the quorum
court in its order of reappropriation (1896) found and recited
that the tax had been levied "to pay interest on the old indebt-
edness," and the circuit court also found that the levy was "to
pay interest on the bonds."   The order of the court in
1895 making the appropriation is as follows:   "It was moved
and seconded that a tax of three mills be levied for old indebt-
edness on each dollar valuation under assessment of 1895,
which motion was put by the presiding judge, and there was a
tax of three mills duly levied for old indebtedness."   No order or
finding of any subsequent court that the appropriation was to pay
the interest on the "old indebtedness" could change or affect the
order made by the court making the levy.   But even if the court
making the levy had ordered same to pay "the interest on old
indebtedness," instead of to pay "the old indebtedness," still
the result would have been the same, and the order of the
quorum court under consideration would still have been in di-
rect conflict with the provision of the constitution *supra*.   For
the balance of the fund in the hands of the treasurer was
sought to be used, by the order reappropriating same, not to
pay interest on "old indebtedness," but for "county general
purposes."   The argument of learned counsel for appellant
that when the accrued interest on the bonded indebtedness had
been paid, the purposes for which the levy had been made were
subserved, is unsound.   Interest was going on all the while,
and would be still accruing so long as the principal remained
unpaid.   So, if the fund was to pay interest on the old in-
debtedness specifically, and not the principal, to use it for any
other purpose than the payment of that interest would be a
palpable diversion of it from the purpose for which it was
levied.   The purpose for which such fund was levied will not
have been accomplished until the principal shall have been

paid; for, until that shall be done, interest will continue to accrue.

Not only was the order of the quorum court reappropriating the fund in conflict with the constitution, but it was also in obvious contravention of the act itself authorizing the refunding of the old indebtedness of counties by calling in the bonds already issued, and issuing new bonds to cover same. Acts 1895, p. 167. The act provides that "any county issuing its bonds for the purpose aforesaid shall, at the time of issuing the same, provide for the levy and collection of an annual tax sufficient to pay the annual interest on such funding bonds as it falls due and a sufficient sinking fund for the payment of the principal of such bonds when they become due" (section 4); and that "whenever there shall be in the hands of the treasurer of the county a sum arising out of the proceeds of the tax aforesaid sufficient money to purchase one or more of the said funding bonds hereinbefore mentioned, the county court may order the treasurer to purchase such bond or bonds as they may designate," (sec. 6); and that "no money collected nor bonds purchased under the provisions of this act shall be subject to execution nor liable to be levied upon, taken, sequestered or applied toward paying the debts of such county, nor for any other purpose than as is provided in this act, and the same shall be held and deemed an inviolable sinking fund for the purpose of extinguishing such county indebtedness and for no other purpose" (sec. 8). There can be no misapprehension of the legislative purpose, as reflected in both the constitution and statute, which the order under consideration plainly ignores.

2.    Did appellee have the right to appeal from such order? The proceedings in both the quorum and circuit courts were treated as adversary without objection from appellant. Still, if appellee could not have been legally a party to the proceeding, the question becomes one of jurisdiction, and can be raised at any time.

Section 13 of article 16 of the constitution provides that "any citizen of any county may   *   *   *   institute suit in behalf of himself and all others interested to protect the inhab-

tants thereof against the enforcement of any illegal exactions whatever."

The order of reappropriation was tantamount to an allowance and enforcement of an illegal exaction against every taxpayer of the county. Each taxpayer was therefore individually interested in such order. The diversion of the balance in the hands of the treasurer from the purpose for which it was raised was equivalent to making a levy by indirection of the amount diverted for "county general purposes," in addition to the regular levy for such purpose. Such diversion would also necessitate the levy of the same amount to meet the deficit thus made in the funds which had been levied for the old indebtedness. As was said by this court in the case of *McCullough* v. *Blackwell*, 51 Ark. 159, the motion by appellee to be made a party for the purpose of protesting against this illegal proceeding "does not manifest the impertinent interference of a stranger without interest, and, when made a party by order of the court, he many prosecute an appeal from the judgment thereafter rendered." Here the appellee, if not formally, was in legal effect made a party to the proceedings, as the record shows his protest was presented, and that the cause was heard "pro and con." The appellee was directly interested, and the proceeding thus became adversary in its nature. We are therefore of the opinion that appellee could appeal from the order of the court making the reappropriation.

The judgment of the Lee circuit court is affirmed.